Scileppi, J.
The controversy between the parties arises out of an explosion and fire at a gasoline station where plaintiffs were employed. Seeking recovery for injuries suffered as a result of the fire, plaintiffs commenced the main action against Shell Oil Company, the owner of the service station.[1] Shell, in turn, impleaded Joseph Visconti, its tenant operator, alleging a right to be indemnified under theories of common law and pursuant to an indemnification agreement. Judgment was rendered after a jury verdict, in favor of plaintiffs in the main action, and Shell was successful in its third-party action. On appeal, the Appellate Division modified by dismissing the complaint in the third-party action and Shell has come to our court raising issues which relate to both the main and third-party actions.[2]
At the trial, it developed that for some time prior to the accident, the lubritorium of the service station had been heated by a natural gas heater affixed to the ceiling. This heater was defective and its fuel line leaked. The line had become rusted and had been jarred by the moving of tires from a nearby rack and the odor of natural gas permeated the lubritorium. Notwithstanding notice of this defective condition, Shell made neither inspections nor repairs and expert testimony indicated that the explosion started in the heater. The jury returned a verdict in favor of plaintiffs implicitly rejecting Shell’s theory that the explosion was caused while plaintiffs were cleaning the floor of the lubritorium with gasoline. Since this appeal is here on affirmed findings of fact and we conclude that there was ample evidence presented at the trial upon which the jury could find that the explosion was the result of Shell’s negligence, Shell is foreclosed from urging its theory of causation in this court. Nor do we find merit in the several issues of law raised by Shell in its appeal in the main action. As to these, suffice it to say that, the trial court’s ruling that evidence of plaintiffs’ prior practice regarding the cleaning of the lubritorium would be inadmissible was proper since this was a collateral matter and not relevant to the issues to be decided, i.e. what took place on the day of the accident (see Eichardson, *210 Evidence [Prince 9th ed.], § 191). Nor was the conduct of the court or counsel for plaintiffs unduly prejudicial and Shell was not prejudiced by the admission of plaintiffs’ hospital records since it was Shell which sought to have them admitted.
Having considered all of Shell’s arguments concerning the propriety of the judgment in the main action, we are not persuaded that reversible error was committed below and turn to that part of Shell’s appeal which relates to its third-party action. Pursuant to stipulation, the issues of common-law and contractual indemnification were to be resolved by the Trial Judge alone, and he concluded that Shell’s active negligence precluded recovery under theories of common law.[3] The Appellate Division agreed with this view and since Shell had notice of the defective heating device and failed to remedy this situation, we see no basis on this record for common-law indemnification. (Jackson v. Associated Dry Goods Corp., 13 N Y 2d 112; Colon v. Board of Educ. of City of N. Y., 11 N Y 2d 446; Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426.)
The remaining question is whether Shell is entitled to contractual indemnification. This claim is predicated upon Shell’s lease with Visconti which provided in relevant part that the ‘ ‘ [1] essee [Visconti] shall indemnify Shell against any and all claims, suits, loss, cost and liability on account of injury or death of persons or damage to property, or for liens on the premises, caused by or happening in connection with the premises (including the adjacent sidewalks and driveways) or the condition maintenance, possession or use thereof or the operations thereon.” The Trial Judge found that, by virtue of this paragraph, Visconti had specifically agreed to indemnify Shell against its own active negligence; but on appeal, the Appellate Division, two Justices dissenting, dismissed the third-party complaint on the theory that the lease lacked “ the all-embracing language upon which an unmistakable intention to indemnify * * * can be spelled out ” (Levine v. Shell Oil Co., 35 A D 2d 575, 576). We agree with the construction placed on the *211 lease by the Trial Judge and conclude that the judgment of that court should be reinstated.
Indemnification clauses have traditionally plagued both drafters and courts alike. Since one who is actively negligent has no right to indemnification unless he can point to a contractual provision granting him that right, a rule has evolved under which courts have carefully scrutinized these agreements for an expression of an intent to indemnify and for some indication of the scope of that indemnification. Thus we have said that ‘ ‘ contracts will not be construed to indemnify a person against his own [active] negligence unless such intention is expressed in unequivocal terms ” (Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 41). This rule appears to be premised upon the view that where a person is under no legal duty to indemnify, his contract assuming that obligation must be strictly construed (Kurek v. Port Chester Housing Auth., 18 N Y 2d 450, 456). Although we have no conceptual difficulty with such a rationale, we do question the judicial feasibility of a rule which allows a court to conclude that where a contract provides that indemnification will be for any and all liability, the parties must have meant something else. Thus courts — perhaps concerned with the notion that indemnification against active negligence leads to negligence by the indemnitee—have often searched for some specific reference to active negligence in the agreement (see Marks v. New York City Tr. Auth., 13 N Y 2d 620; Inman v. Binghamton Housing Auth., 3 N Y 2d 137; Fuller Co. v. Fischbach & Moore, 7 A D 2d 33; see, also, Batson-Cook Co. v. Industrial Steel Erectors, 257 F. 2d 410; Martford Acc. & Ind. Co. v. Worden-Allen Co., 238 Wis. 124; 28 N. Y. Jur., Indemnity, § 6; Collins and Dugan; Indemnification Contracts — Some Suggested Problems and Possible Solutions, 50 Marquette L. Rev. 77). Such a rigid adherence to the doctrine of Thompson-Starrett is, however, neither required for reasons of policy nor by other decisions of this court. We have found an expression of the requisite intent in several cases where no mention was made of active negligence. In Turner Constr. Co. v. Rockwood Sprinkler Co. (275 N. Y. 635) an intent to indemnify was found in the words, “ agreed to indemnify * * * any and all loss * * * occasioned directly or indirectly by the act or negligence of the subcontractor or *212 * * * otherwise ” (see Walters v. Rao Elec. Equip. Co., 289 N. Y. 57, 62) and in Jordan v. City of New York (3 A D 2d 507, 509, affd. 5 N Y 2d 723) the language, “whether such damages or injuries be attributable to negligence of the Contractor or his employees or otherwise ” was held to be sufficient (see, also, National Tr. Co. v. Davis, 6 F. 2d 729; Insurance Co. v. Elgin Joliet & Eastern Ry. Co., 229 F. 2d 705; Northern Pacific Ry. Co. v. Thornton Bros. Co., 206 Minn. 193; Union Pacific R. R. Co. v. Ross Transfer Co., 64 Wn. 2d 486).
Indeed, more recently we have allowed indemnification where one party agreed to hold the other “ harmless against all claims and demands * * * of whatsoever kind or nature ” (Kurek v. Port Chester Housing Auth., 18 N Y 2d 450, 456).. It was on the basis of our decision in Kurek that we sustained the liability of an indemnitor whose agreement simply provided for indemnification “ against any and all liability * * * including any and all expense, legal or otherwise” (Liff v. Consolidated Edison Co. of N. Y., 29 A D 2d 665, affd. 23 N Y 2d 854).
Inasmuch as Kurek and Liff have made substantial inroads on the Thompson-Starrett rationale, it is no longer a .viable statement of the law. As we said in Kurek (18 N Y 2d, supra, at p. 456): “ courts should be wary of construing these provisions in such a manner that they become absolutely meaningless. Therefore, indemnification has been permitted under contractual provisions though the language of those provisions fell short of expressly stating that its coverage extended to the active negligence of the party to be indemnified where, as here, that appears to have been the unmistakable intent of the parties.” Although it is, of course, true that the indemnification clause at bar differs from those in the above-cited cases in that it does not use the words “ of whatsoever kind or nature ” or the phrase “or otherwise,” we hold that this is nothing more than a- semantical distinction without a difference. The clause, in the instant case, clearly states that Visconti will be required to indemnify Shell against all claims, suits, loss, cost and liability. Since the plain meaning of these words fairly includes the liability for the active negligence of Shell, we see no reason why more should be required to establish the unmistakable intent of the parties. A contrary construction would *213 result in the conclusion that the clause was a nullity. Surely, this could not have been the intent of the parties (see Corhill Corp. v. S. D. Plants, Inc., 9 N Y 2d 595, 599; Muzak Corp. v. Hotel Taft Corp., 1 N Y 2d 42, 46).
Lastly, there has been no showing that the agreement involved herein is either a contract of adhesion or an unconscionable agreement and we need not now pass upon the question whether an indemnification clause in a contract of that nature would be void for those reasons. In this regard, it is significant that in the instant case Shell was under no legal obligation to allow Visconti to operate the service station. Similarly Visconti was not required to assume the responsibilities of the contract. In this arm’s length transaction the indemnification provision was a part of business relationship between the parties. If Visconti had reservations as to the scope of the agreement, he should have insisted on a different indemnification clause or refused to give his assent to the contract (see Ciofalo v. Vic Tanney Gyms, 10 N Y 2d 294). Since he apparently elected not to do so and has not demonstrated to this court that Shell was guilty of fraud or overreaching conduct, he is bound by the expression of intent in the lease.
Accordingly, the order appealed from should be modified to the extent of reinstating the judgment of the trial court in favor of Shell Oil Co. against Visconti in the third-party action, and except as so modified, the judgment in favor of plaintiffs against Shell Oil Co. is in all respects affirmed.
Chief Judge Ftjld and Judges Bergan, Breitel, Jasen and Gibson concur; Judge Bijrke taking no part.
Order modified, with costs, to plaintiffs-respondents in the main action and to appellant in the third-party action in accordance with the opinion herein and, as so modified, affirmed.

. A similar cause of action against the Brooklyn Union Gas Company was dismissed at the trial and is not involved in this appeal.

. Plaintiffs’ motion to dismiss the appeal in the main action was denied by our court (see Levine v. Shell Oil Co., 27 N Y 2d 797).

. Shell now questions whether this stipulation covered the issue of common-law indemnification. This is untenable since upon our view of the record there is no question but that Shell agreed that both issues were to Be determined by the Trial Judge.